Michael B. Moore, Esq. (SBN 62182)
595 Market Street, Suite 1320
San Francisco, California 94105
Telephone: (415) 956-6500
Facsimile: (415) 956-6580
Email: mbm@moore-law.net

Ralph W. Boroff, Esq. (SBN 59164)
55 River Street, Suite 100
Santa Cruz, CA 95060
Telephone: (831) 458-0502
Facsimile: (831) 426-0159

Attorneys for Plaintiffs

IN THE DISTRICT COURT OF THE UNITED STATES OF AMERICA
NORTHERN DISTRICT OF THE STATE OF CALIFORNIA
SAN JOSE DIVISION

JIMMY D. HAWS, SETH DANIEL HAWS, and MIA SKYE HAWS, minors, by and through their guardian ad litem, CARRIE A. HAWS, and CARRIE A. HAWS, individually,

Plaintiffs,

v.

COUNTY OF MONTEREY, MICHAEL KANALAKIS, NATIVIDAD MEDICAL CENTER and DOES 1-300, inclusive,

Defendants.

CASE NO.: C07 02599 JF

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO COUNTY OF MONTEREY AND MICHAEL KANALAKIS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT WITH PREJUDICE**

Date: July 20, 2007
Time: 9:00 a.m.
Ctrm: 3, 5th Floor
Judge: Hon. Jeremy Fogel
Action Filed: May 16, 2007

*Jimmy D. Haws, et al. V. County of Monterey, et al.* Case No. C 07-02599 JF
Plaintiffs' Memorandum of Points and Authorities in Opposition to County of Monterey and Michael Kanalakis' Motion to Dismiss Plaintiffs' Complaint i

## TABLE OF CONTENTS

PAGE

I. INTRODUCTION AND STATEMENT OF FACTS . . . . . 1

II. STANDARD OF REVIEW . . . . . 4

III. CARRIE, SETH AND MIA HAWS, THE WIFE AND GUARDIAN AD LITEM AND CHILDREN, RESPECTIVELY, OF JIMMY HAWS HAVE STANDING TO BRING THIS ACTION . . . . . 4

IV. PLAINTIFFS' CLAIMS ARE COGNIZABLE UNDER FEDERAL LAW . . . . . 5

A. Due Process of Law Under the 14th Amendment . . . . . 5

B. Cruel and Unusual Punishment Under the 8th Amendment . . . . . 6

C. Zone of Privacy Under the Fourth and Ninth Amendments . . . . . 8

V. PLAINTIFFS' COMPLAINT ALLEGES SUFFICIENT FACTS SHOWING THEY WERE DEPRIVED OF A COGNIZABLE INTEREST . . . . . 8

VI. SHERIFF KANALAKIS IS NOT ENTITLED TO QUALIFIED IMMUNITY . . . . . 10

VII. THE COURT SHOULD EXERCISE ITS SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE-LAW BASED CLAIMS . . . . . 10

A. Fifth Cause of Action for Negligence . . . . . 10

B. Sixth Cause of Action for Failure to Take Reasonable Action to Summon Immediate Medical Care Under California Government Code § 845.6 . . . . . 11

C. Seventh Cause of Action for Dangerous Condition of Public Property . . . . . 13

VIII. CONCLUSION . . . . . 13

*Jimmy D. Haws, et al. V. County of Monterey, et al.* Case No. C 07-02599 JF
Plaintiffs' Memorandum of Points and Authorities in Opposition to County of Monterey and Michael Kanalakis' Motion to Dismiss Plaintiffs' Complaint ii

TABLE OF AUTHORITIES

**CASES** **PAGE**

*Anthony v. Dowdle*, 853 F.2d 741, 743 (9th Cir. 1988) . . . . . 7

*Barren v. Harrington*, 152 F.3d 1193 (9th Cir. 1998) . . . . . 9

*Borer v. American Airlines*, (1977) 19 Cal.3d 441 . . . . . 5

*Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996) . . . . . 6

*Estelle v. Gamble,* 429 U.S. 97 104 (1976) . . . . . 6

*Franklin v. Oregon*, 662 F.2d 1337 (9th Cir. 1981) . . . . . 7, 8

*Haddock v. Board of Dental Examiners of California* 777 F.2d 462, 464 (9th Cir. 1985) . . . . . 4

*Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) . . . . . 8

*Hunt v. Dental Department*, 865 F.2d 198 (9th Cir. 1989) . . . . . 6

*Ingraham v. Wright*, 430 U.S. 651 (1977) . . . . . 7

*Jones v. City of Los Angeles,* 444 F.3d 1118, 1129 (9th Cir. 2006) . . . . . 7

*Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986) . . . . . 6

*Lucas v. County of Los Angeles,* (1996) 47 Cal.App.4th 277, 289 . . . . . 11

*L. W. v. Grubbs*, 974 F.2d 119 (9th Cir. 1992) . . . . . 6

*McGuckin v. Smith* (9th Cir. 1992) 974 F.2d 1050, 1061 . . . . . 7

*Nix v. Preformed Line Products Company* (1985) 170 Cal.App.3d 975 . . . . . 5

*Jimmy D. Haws, et al. V. County of Monterey, et al.* Case No. C 07-02599 JF
Plaintiffs' Memorandum of Points and Authorities in Opposition to County of Monterey and Michael Kanalakis' Motion to Dismiss Plaintiffs' Complaint
iii

**CASES** **PAGE**

*Ortez v. Washington County*,
88 F.3d 804 (9th Cir. 1996) . . . . . . . . . . 9

*Smith v. City of Fontana*,
818 F.2d 1412 (9th Cir. 1987) . . . . . . . . . . 4

*Redman v. County of San Diego,*
942 F.2d 1435 (9th Cir. 1991) . . . . . . . . . . 6, 8, 9

*Revere v. Massachusetts General Hospital*,
463 U.S. 239, 244 (1983) . . . . . . . . . . 6

*Rodriguez v. Bethlehem Steel Corp.*
(1974) 12 Cal.3d 382 . . . . . . . . . . 5

*Suter v. Leonard*
(1975) 45 Cal.App.3d 744 . . . . . . . . . . 5

*Thompkins v. Belt* ,
828 F.2d 298, 303-04 (5th Cir. 1987) . . . . . . . . . . 8

*Watson v. State*,
21 Cal.App.4th 836 (1993) . . . . . . . . . . 12

*West v. Atkins* ,
487 U.S. 42 (1988) . . . . . . . . . . 9

*Wood v. Sunn,*
(9th Cir. 1988) 852 F.2d 1205 . . . . . . . . . . 7

*Zeilman v. County of Kern*
(1985) 168 Cal.App.3d 1174 . . . . . . . . . . 12

**GOVERNMENT CODES** **PAGE**

Government Code §820(a) . . . . . . . . . . 10

Government Code §844.6 . . . . . . . . . . 10

Government Code § 845.6 . . . . . . . . . . 11

*Jimmy D. Haws, et al. V. County of Monterey, et al.* Case No. C 07-02599 JF
Plaintiffs' Memorandum of Points and Authorities in Opposition to County of Monterey and Michael Kanalakis' Motion to Dismiss Plaintiffs' Complaint

iv

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION AND STATEMENT OF FACTS**

Plaintiffs' complaint provides detailed, specific facts and is based on well-tested legal theories. For the convenience of the Court, this Memorandum of Points and Authorities will follow the sectional format of defendants' Memorandum of Points and Authorities.

The following is a brief summary of the facts provided in the complaint.

Prior to and on the day of this incident, Jimmy D. Haws was a pretrial detainee at the Salinas Jail (¶12). Carrie Haws is the wife and guardian ad litem of Jimmy Haws and Seth and Mia Haws are their minor children (¶4).

The County of Monterey (hereinafter "County") is a public entity which is responsible for and administers the Salinas Jail through its agency, the Monterey County Sheriff's Department (hereinafter "MCSD"). County promulgates policies and practices for the housing, custody, care, safekeeping and protection of inmates (including pretrial detainees) in the Salinas Jail. The County constructed, owned, operated, repaired, maintained and controlled the buildings in which the Salinas Jail is located (¶5). Michael Kanalakis (hereinafter "Kanalakis") is and was the Sheriff of Monterey County who, with other County officials, ran, operated, oversaw, administered, supervised and were otherwise responsible for the conduct of MCSD at the Salinas Jail (¶6). As a result of their policies, customs and practices, County and Kanalakis caused the Salinas Jail to be overcrowded and permitted cells built to house one person to house two persons, which contributed to causing inmate on inmate violence. County and Kanalakis also required inmates who had fought with each other to be housed in the same cell and/or in the same pod and required violent and/or mentally unstable inmates to be housed in the same cell and/or pod as other inmates (¶29 a-d).

Prior to and on the day of this incident, Roger Spencer (hereinafter "Spencer") was a violent, mentally unstable inmate in the custody of the County and MCSD and Kanalakis at the Salinas Jail. At all times, County, MCSD and Kanalakis knew or should have known that Spencer was a danger

*Jimmy D. Haws, et al. V. County of Monterey, et al.* Case No. C 07-02599 JF
Plaintiffs' Memorandum of Points and Authorities in Opposition to County of Monterey and Michael Kanalakis' Motion to Dismiss Plaintiffs' Complaint Page 1 of 13

to other persons in custody at the Salinas Jail (¶13). Prior to the day of this incident, County, MCSD and Kanalakis housed Jimmy Haws and Spencer in the same cell in the same pod and Spencer attacked Jimmy Haws at that time. Spencer and Jimmy Haws were, as a result, separated by placement in isolation but thereafter were housed together again in a two-person cell in the same pod (¶14).

As a result of their policies, customs and practices: the County and Kanalakis required Sheriff's deputies assigned to the Salinas Jail to work 12 hour shifts, causing the deputies to be tired and overworked and thereby reducing their effectiveness in observing and supervising the inmates. County and Kanalakis failed to assign sufficient Sheriff's deputies to the Salinas Jail in order to provide adequate monitoring and supervision of the inmates. County and Kanalakis also failed to properly train the Sheriff's deputies assigned to the Salinas Jail so that the deputies did not have sufficient knowledge or skills to adequately monitor and supervise the inmates. County and Kanalakis failed to provide jail buildings constructed so that the Sheriff's deputies could visually observe all inmates at all locations in the Salinas Jail and failed to provide adequate video and/or audio equipment so that the Sheriff's deputies could visually observe all inmates at all locations in the Salinas Jail (¶29 e-i).

This incident occurred on December 7, 2006. On that morning, Spencer loudly argued with and physically attacked Jimmy D. Haws in their cell. The argument and attack were seen and heard by other inmates but were not seen or heard by the deputies responsible for supervising inmates or were ignored by them (¶15). Later that morning when Jimmy Haws and Spencer were released into the common area of the pod, Spencer resumed loudly arguing with and threatening Jimmy Haws. The argument and threats were seen and heard by other inmates but were not seen or heard by the deputies or were ignored by them (¶16).

Spencer then confronted Jimmy Haws on the stairs between the two levels of the pod, attacked him and held him in a headlock for several minutes during which time Jimmy Haws became unconscious. This activity was seen and heard by other inmates but was not seen or heard by

*Jimmy D. Haws, et al. V. County of Monterey, et al.* Case No. C 07-02599 JF
Plaintiffs' Memorandum of Points and Authorities in Opposition to County of Monterey and Michael Kanalakis' Motion to Dismiss Plaintiffs' Complaint Page 2 of 13

deputies or was ignored by them (¶17).

When Spencer released him, Jimmy Haws fell unconscious down the stairs, violently striking his head and suffering a closed head injury. This was observed by a Sheriff's deputy (¶18).

The County and Kanalakis were repeatedly given notice of the failure to summon and provide adequate medical care for inmates at the Salinas Jail and a deliberate indifference to the serious medical needs of its inmates but took no measures to prevent such conduct. County and Kanalakis thereby promoted an informal custom or policy which tolerated and promoted the failure to summon and denial of proper medical attention for inmates in the Salinas Jail (¶49).

As a result, it took 42 minutes for emergency medical personnel to be summoned and to transport Jimmy Haws less than one city block to Natividad Medical Center (herinafter "NMC") where he arrived at 11:42 a.m. At that time Jimmy Haws was suffering from a closed head injury but was conscious and able to speak (¶19). NMC is a public hospital operated by the County which provided medical treatment to persons detained by the County in the Salinas Jail (¶8).

A physician at NMC promptly determined that Jimmy Haws was suffering from a closed head injury and ordered a head CT scan at 11:59 a.m. County employees delayed transporting Jimmy Haws to the location in the hospital for the CT scan for over one-and-one-half hours during which time Jimmy Haws' condition seriously deteriorated. During this time, Jimmy Haws repeatedly vomited, a symptom of severe head injury, but no CT was done. Jimmy Haws became extremely restless and anxious, but no CT was done. Jimmy Haws became incontinent of urine, very agitated and non-cooperative (also symptoms of severe head injury) but no CT was done (¶20).

A head CT scan was finally performed at 1:30 p.m. and disclosed massive internal bleeding of Jimmy Haws' brain, requiring surgical intervention but transfer of Jimmy Haws to another facility for surgery was not authorized for another hour and he was not transferred to the other facility for 45 minutes after that, by which time he had suffered irreversible brain damage (¶21).

In acting and failing to act as described above, each defendant acted with deliberate indifference (¶31, 36, 45, 60).

*Jimmy D. Haws, et al. V. County of Monterey, et al.*   Case No. C 07-02599 JF
Plaintiffs' Memorandum of Points and Authorities in Opposition to County
of Monterey and Michael Kanalakis' Motion to Dismiss Plaintiffs' Complaint   Page 3 of 13

## II.

## STANDARD OF REVIEW

In reviewing a Rule 12(b)(6) motion, the Court must accept as true all material allegations in the complaint, as well as inferences to be drawn from them. *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

The test is whether the facts, as alleged, support *any* valid claim entitling plaintiff to relief . . . not necessarily the one intended by plaintiff. Thus, a complaint should not be dismissed because plaintiff erroneously relies on the wrong theory if the facts alleged support any valid theory. *Haddock v. Board of Dental Examiners of California*, 777 F.2d 462, 464 (9th Cir. 1985).

## III

## CARRIE, SETH AND MIA HAWS, THE WIFE AND GUARDIAN AD LITEM AND CHILDREN, RESPECTIVELY, OF JIMMY HAWS HAVE STANDING TO BRING THIS ACTION

Carrie, Seth and Mia Haws have alleged that as a result of defendants' conduct, they have suffered the loss of consortium, comfort, care, services and support of Jimmy Haws (¶23, 24 and 25) and thereby suffered a violation of their constitutionally protected rights (¶30, 35, 43, 49 and 50).

The Ninth Circuit Court of Appeal has long recognized the right of immediate family members to recovery for loss of consortium in §1983 Civil Rights cases. See e.g., *Morrison v. Jones,* 607 F.2d 1269 (9th Cir. 1979) (In Section 1983 actions based on 14th Amendment substantive due process, "A parent has a constitutionally protected liberty interest in the companionship and society of his or her child." *Id* at 655). The Court in *Morrison* reviewed the long line of Supreme Court cases stressing "the importance of familial bonds". *Id* at 653.

In *Smith v. City of Fontana,* 818 F.2d 1412 (9th Cir. 1987), the Court approved the right of children of a man killed by police officers to recover for their loss of consortium in a Section 1983 action based on substantive due process claims. ("We hold that a child's interest in her relationship with a parent is sufficiently weighty by itself to constitute a cognizable liberty interest." *Id* at 1419).

In so doing, the Ninth Circuit stated:

*Jimmy D. Haws, et al. V. County of Monterey, et al.* Case No. C 07-02599 JF
Plaintiffs' Memorandum of Points and Authorities in Opposition to County of Monterey and Michael Kanalakis' Motion to Dismiss Plaintiffs' Complaint Page 4 of 13

> "Our conclusion also finds compelling support in the Legislative history of section 1983's precursor, the Ku Klux Klan Act of 1871. Representative Butler described the Act 'as a remedy for wrongs, arsons, and murders done. This is what we offered to a man whose house has been burned, as a remedy, to a woman whose husband has been murdered, as a remedy; to the children whose father has been killed, as a remedy.' Cong. Glob, 42d Cong., 1st Sess. 807 (1871)." *Id* at 1419.

Based on these authorities, the spouse and children of Jimmy Haws should be allowed to pursue their Section 1983 federal claims.

With respect to the State law causes of action, the law of California has long supported the right of a spouse to sue for loss of consortium. *Rodriguez v. Bethlehem Steel Corp.*, (1974) 12 Cal.3d 382.

Early decisions precluded loss of consortium claims by children of injured parents under California law: *Suter v. Leonard,* (1975) 45 Cal.App.3d 744 and *Borer v. American Airlines* (1977) 19 Cal.3d 441.

Later decisions called for the re-examination of the exclusion of children from a loss of consortium claim. See e.g., *Nix v. Preformed Line Products Company* (1985) 170 Cal.App.3d 975 noting the numerous out-of-state decisions upholding a child's right to recover for loss of consortium since the *Borer* decision and also noting the inconsistency of allowing recovery for loss of spousal consortium but not for parental loss of consortium.

Plaintiffs concede that there is no present appellate authority in California allowing recovery for loss of parental consortium by children but contend that the California Supreme Court would reverse its 30 year old holding in *Borer* if presented with the question today.

It is respectfully submitted that the motion to dismiss the loss of consortium claims of both the wife and children of Jimmy Haws should be denied for both the federal and state law claims.

**IV.**

**PLAINTIFFS' CLAIMS ARE COGNIZABLE UNDER FEDERAL LAW**

**A. Due Process of Law Under the 14th Amendment**

A pretrial detainee who is assaulted in a county jail as a result of policies permitting

*Jimmy D. Haws, et al. V. County of Monterey, et al.* Case No. C 07-02599 JF
Plaintiffs' Memorandum of Points and Authorities in Opposition to County of Monterey and Michael Kanalakis' Motion to Dismiss Plaintiffs' Complaint Page 5 of 13

overcrowding and housing violent inmates with nonviolent inmates has a Section 1983 action under the Federal Civil Rights Law §1983. *Redman v. County of San Diego,* 942 F.2d 1435 (9th Cir. 1991). See also *L. W. v. Grubbs,* 974 F.2d 119 (9th Cir. 1992) (A valid claim was pleaded against supervisor at State facility who assigned plaintiff to work with an inmate who was a violent sex offender and who thereafter kidnapped and raped plaintiff).

*Redman* is the Ninth Circuit case in point requiring a denial of the motion to dismiss plaintiffs' claims based on the assault by Spencer.

The Fourteenth Amendment also precludes 'deliberate indifference' to serious medical needs of pretrial detainees.

"The Eighth Amendment's proscription against cruel and unusual treatment is violated when officials remain deliberately indifferent to the serious medical needs of convicted prisoners. *Estelle v. Gamble,* 429 U.S. 97 104 (1976). Because pretrial detainees are not convicted prisoners, the rights of those in police custody to receive medical treatment arise under the Due Process clause of the Fourteenth Amendment. See *Revere v. Massachusetts General Hospital*, 463 U.S. 239, 244 (1983). However, even though pretrial detainees claims "arise under the due process clause, the Eighth Amendment guarantees provide a minimum standard of care for determining [a prisoner's] rights as a pretrial detainee including [the prisoner's] rights . . . to medical care." *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986) (emphasis added). In fact, the due process rights are at least as great as the Eighth Amendment protections available to a convicted prisoner. *Revere* 463 U.S. at 244." *Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996) (Section 1983 action by rape victim who had been placed under arrest but not given medical care).

**B. Cruel and Unusual Punishment Under the 8th Amendment**

Deliberate indifference to the serious medical needs of prisoners may constitute cruel and unusual punishment and thus violate the Eighth Amendment to the United States Constitution. *Hunt v. Dental Department*, 865 F.2d 198 (9th Cir. 1989) (allegation of deliberate indifference related to failure of prison staff to provide treatment for serious, painful, chronic dental problems for three

*Jimmy D. Haws, et al. V. County of Monterey, et al.* Case No. C 07-02599 JF
Plaintiffs' Memorandum of Points and Authorities in Opposition to County of Monterey and Michael Kanalakis' Motion to Dismiss Plaintiffs' Complaint Page 6 of 13

months found sufficient to preclude summary judgment on Section 1983 claim); *Wood v. Sunn,* (9th Cir. 1988) 852 F.2d 1205 (deliberate indifference to prisoner's chronic urological and kidney problems stated cause of action for Section 1983 claim); *McGuckin v. Smith* (9th Cir. 1992) 974 F.2d 1050, 1061 (the Court noted that the more serious the prisoner's medical needs "and the more unwarranted the defendant's action in light of those needs, the more likely it is that a plaintiff has established 'deliberate indifference' on the defendant's part").

The Eighth Amendment's prohibition against cruel and unusual punishment not only applies to convicted prisoners but also "the criminal law process as a whole" including "preconviction law enforcement measures such as arrest, jailing and prosecution." *Jones v. City of Los Angeles*, 444 F.3d 1118, 1129 (9th Cir. 2006). The Court in *Jones* corrects the misinterpretation of *Ingraham v. Wright*, 430 U.S. 651 (1977) set out in defendants' Memorandum of Points and Authorities.

Plaintiffs have alleged that Jimmy Haws was suffering from an obvious catastrophic head injury, that defendants knew he needed specific medical care as a result (to be taken to the hospital, to receive a CT scan and to have surgery) and nevertheless delayed obtaining that medical care with deliberate indifference under policies and practices of the defendants. These allegations amount to far more than mere negligence and require the denial of the motion to strike plaintiffs claims based on denial of reasonable medical care.

The cases cited by defendants are inapposite. In *Franklin v. Oregon*, 662 F.2d 1337 (9th Cir. 1981), the *pro se* plaintiff filed 33 separate lawsuits that were either obviously unmeritorious or based on insubstantial medical conditions. For example, one lawsuit alleged that the prison clinic took 12 x-rays where two would have been sufficient. Another lawsuit contended that a prison official did not enable him to get a well balanced breakfast after having received an insulin injection. *Anthony v. Dowdle*, 853 F.2d 741, 743 (9th Cir. 1988) involved a Section 1983 claim in which the plaintiff's injuries were neither obvious to the defendants nor were any outward manifestations of the seriousness of his internal injuries noticed by the defendants. Plaintiff did not continue to complain of pain after his initial accident and did not become aware that he even had permanent

*Jimmy D. Haws, et al. V. County of Monterey, et al.* Case No. C 07-02599 JF
Plaintiffs' Memorandum of Points and Authorities in Opposition to County of Monterey and Michael Kanalakis' Motion to Dismiss Plaintiffs' Complaint Page 7 of 13

injuries until more than a year and a half after the accident (*Id* at 743). Neither *Franklin* or *Anthony* are authority for dismissing plaintiffs' Section 1983 claims in this action.

For the foregoing reasons, the motion to dismiss should be denied.

**C. Zone of Privacy Under the Fourth and Ninth Amendments**

Plaintiffs concede that their claims are not cognizable under the Fourth and Ninth Amendments.

**V.**

**PLAINTIFFS' COMPLAINT ALLEGES SUFFICIENT FACTS SHOWING THEY WERE DEPRIVED OF A COGNIZABLE INTEREST**

As discussed above, plaintiffs have properly asserted their rights under the Eighth and Fourteenth Amendments and have pleaded sufficient facts which, if proved, will support liability under the Federal Civil Rights Act.

Specifically as to Sheriff Kanalakis, the allegations of the complaint are virtually identical to the allegations against the Sheriff in *Redman* that were held to be sufficient by the Ninth Circuit Court of Appeal. In *Redman*, plaintiff alleged that, due to a policy of overcrowding and use of one person cells for multiple inmates, he was placed in an area with a high risk of assault and that the Sheriff was responsible for the operation of the jail and the implementation of those policies. *Id* at 1447-1448. The Court of Appeal noted that there was no evidence that the Sheriff had any personal involvement in the deprivation of plaintiff's constitutional right to personal security but that the inquiry did not end there:

> "Nonetheless, our inquiry does not end here. 'A supervisor may be liable if there exists *either* (1) his or her personal involvement in the constitutional deprivation, *or* (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation'. *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citing *Thompkins v. Belt* , 828 F.2d 298, 303-04 (5th Cir. 1987)) (Emphasis added).
>
> Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation'. *Id* (quoting *Thompkins*, 828 F.2d at 304)" *Id* at 1446-1447.

*Jimmy D. Haws, et al. V. County of Monterey, et al.* Case No. C 07-02599 JF
Plaintiffs' Memorandum of Points and Authorities in Opposition to County of Monterey and Michael Kanalakis' Motion to Dismiss Plaintiffs' Complaint Page 8 of 13

In the complaint, plaintiffs have alleged that Sheriff Kanalakis "ran, operated, oversaw, administered, supervised and [was] otherwise responsible for the conduct of MCSD at the Salinas Jail" (¶6). Plaintiffs also allege that Sheriff Kanalakis "knew or should have known that Spencer was a danger to other persons in custody at the Salinas Jail" (¶13) and housed Jimmy Haws with Spencer after Spencer had already assaulted Jimmy Haws (¶14). Plaintiffs also allege that Sheriff Kanalakis personally enforced the policies, customs and practices that included overcrowding, multiple inmates in one-person cells, housing inmates who had fought with each other in the same cell or pod, housing violent and/or mentally unstable inmates in the same cell or pod as other inmates, requiring deputies to serve extra long shifts, failing to assign sufficient deputies to the jail, failing to train the deputies sufficiently, failing to provide appropriate jail buildings and surveillance equipment (¶29) and failure to summon and provide adequate medical care and deliberate indifference to the serious medical needs of its inmates (¶49).

As pointed out in *Redman*, these allegations are sufficient to establish that the Sheriff personally violated Jimmy Haws' constitutional rights.

The cases cited by defendants on this point in their brief are not persuasive or analogous. *West v. Atkins* , 487 U.S. 42 (1988) involved a part time contract doctor who treated a prisoner not a full time government employee such as a sheriff. *Barren v. Harrington*, 152 F.3d 1193 (9th Cir. 1998) involved a *pro se* complaint that simply stated conclusions without the specific factual allegations in the present complaint. *Ortez v. Washington County*, 88 F.3d 804 (9th Cir. 1996) dismissed the claims against defendants where there were no specific allegations but upheld the claims against defendants where there were specific allegations such as in the present complaint.

Contrary to the claim of defendants in their memorandum of points and authorities, plaintiffs do not allege that Sheriff Kanalakis acted only through his supervisory officials and employees. In addition to the allegations described above in this section, plaintiffs allege that Kanalakis had been notified by his supervisory officials and employees on repeated occasions of a pattern of ongoing constitutional violations and practices at the jail including indifference to the safety of inmates and

*Jimmy D. Haws, et al. V. County of Monterey, et al.* Case No. C 07-02599 JF
Plaintiffs' Memorandum of Points and Authorities in Opposition to County of Monterey and Michael Kanalakis' Motion to Dismiss Plaintiffs' Complaint Page 9 of 13

failure to summon and provide adequate medical care. This does not constitute an allegation that Sheriff Kanalakis had no personal role in implementing the practices and policies complained of.

For the foregoing reasons, the motion to dismiss must be denied.

**VI.**

**SHERIFF KANALAKIS IS NOT ENTITLED TO QUALIFIED IMMUNITY**

The sole basis raised to support qualified immunity is the claim that plaintiffs allegations are inadequate to show the Sheriff's conduct violated a constitutional right (defendants Memorandum of Points and Authorities, p.7:24-27). As demonstrated in section V. above, plaintiffs allegations are sufficient to establish personal responsibility on the part of Sheriff Kanalakis and thus his claimed qualified immunity must fail.

**VII.**

**THE COURT SHOULD EXERCISE ITS SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE-LAW BASED CLAIMS**

**A. Fifth Cause of Action for Negligence**

Defendants in their memorandum of points and authorities misconstrue the Fifth Cause of Action as seeking recovery under principles of common law against the public entity defendants. In fact, the Fifth Cause of Action seeks recovery for common law negligence against Does 51-100 (sheriff's deputies or other employees or agents of the County employed at the Salinas Jail ¶7) for negligently failing to exercise due care in monitoring and supervising Spencer and Jimmy Haws and for failing to promptly and efficiently transport and transfer Jimmy Haws to receive medical care. Under Government Code §820(a), "a public employee is liable for injury caused by his act or omission to the same extent as a private person."

Similarly, the immunity under Government Code §844.6 for injuries by and to prisoners does not exonerate "a public employee from liability for injury proximately caused by his negligent or wrongful act or omission." §844.6(d).

//

//

*Jimmy D. Haws, et al. V. County of Monterey, et al.* Case No. C 07-02599 JF
Plaintiffs' Memorandum of Points and Authorities in Opposition to County of Monterey and Michael Kanalakis' Motion to Dismiss Plaintiffs' Complaint Page 10 of 13

### B. Sixth Cause of Action for Failure to Take Reasonable Action to Summon Immediate Medical Care Under California Government Code § 845.6

Government Code §845.6 provides that " . . . a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care . . .".

Plaintiffs allege that it took 42 minutes for the County and its employees to summon emergency medical personnel and to transfer Jimmy Haws less than one city block to Natividad Medical Center (¶19).

Plaintiffs allege that defendant County and its employees (Does 101-200) knew, or had reason to know, that Jimmy Haws was in need of an immediate CT scan of his head to determine the extent of his closed head injury and to determine his need for further treatment but, nevertheless, failed to take reasonable action to promptly obtain the head CT scan and, as a result, delayed proper diagnosis and treatment of Jimmy Haws, contributing to the severity and extent of his permanent brain damage (¶57). That delay was over an hour and a half (¶20 and 21).

Plaintiffs also allege that, once the head CT scan was performed and reviewed, defendant County and its employees knew, or had reason to know, that Jimmy Haws was in immediate need of brain surgery at another facility to relieve the pressure on his brain but County and its employees nevertheless failed to take reasonable action to promptly transfer Jimmy Haws to another facility, thus resulting in an unreasonable delay of brain surgery and a more severe level of brain damage (¶58). This delay was over an hour and 45 minutes (¶21)[1].

These allegations are sufficient to support a recovery on this theory. Contrary to the implication of defendant's memorandum of points and authorities, plaintiffs do not have to plead or prove the subjective intent to injure on the part of defendants. As stated by the California Court of Appeal in *Lucas v. County of Los Angeles* (1996) 47 Cal.App.4th 277, 289:

---

[1] A total of over four hours of delays.

*Jimmy D. Haws, et al. V. County of Monterey, et al.*   Case No. C 07-02599 JF
Plaintiffs' Memorandum of Points and Authorities in Opposition to County
of Monterey and Michael Kanalakis' Motion to Dismiss Plaintiffs' Complaint   Page 11 of 13

> "Respondents argue that the phrase 'reason to know' as used in Government Code Section 845.6, require a subjective determination of whether defendants had the requisite degree of knowledge of the serious medical condition. They base this assertion on Watson's [*Watson v. State*, 21 Cal.App.4th 836 (1993) cited by defendants] statement that '[l]iability is limited to those situations where the public entity intentionally or unjustifiably fails to furnish immediate medical care.' (21 Cal.App.4th 836, 841). We are not persuaded that Watson meant to declare a subjective standard. To the contrary, the phrase 'has reason to know' is the equivalent of an objective standard."

In the complaint, plaintiffs allege that a sheriff's deputy observed Jimmy Haws falling unconscious down the stairs and violently striking his head and suffering a closed head injury, but it nevertheless took 42 minutes to summon emergency medical personnel and move him one block to NMC (¶18 and 19), that a physician with NMC promptly determined that Jimmy Haws was suffering from a closed head injury and required a CT scan but that did not take place for over one and a half additional hours (¶20) and that the CT scan demonstrated surgical intervention was necessary but it took yet another hour and forty-five minutes to transfer Jimmy Haws to a hospital where brain surgery could be performed.

Thus, the allegations in this complaint are in no way similar to the allegations in *Watson v. State* (1993) 21 Cal.App.4th 836 where it was alleged that the prisoner was injured playing basketball and seen repeatedly by doctors who reasonably failed to diagnose a torn Achilles tendon. This action is more analogous to *Zeilman v. County of Kern* (1985) 168 Cal.App.3d 1174 in which plaintiff was on crutches at the time of her arrest and fell in the county jail but was given no medical assistance. In this action, Jimmy Haws was thrown down the stairs unconscious but defendants delayed unreasonably taking him to the hospital. The doctor immediately noted that he had a closed head injury and required a CT scan to diagnose the extent of his injury but defendants unreasonably delayed the CT scan. When the CT scan was taken, the need for surgery was apparent but defendants delayed transporting him to a hospital where he could have the brain surgery.

For the above reasons, the motion to dismiss must be denied.

//

*Jimmy D. Haws, et al. V. County of Monterey, et al.* Case No. C 07-02599 JF
Plaintiffs' Memorandum of Points and Authorities in Opposition to County of Monterey and Michael Kanalakis' Motion to Dismiss Plaintiffs' Complaint Page 12 of 13

**C. Seventh Cause of Action for Dangerous Condition of Public Property**

Plaintiffs concede that the public entities and public employees are immune for injury to a prisoner due to the dangerous condition of public property.

**VIII. CONCLUSION**

For the foregoing reasons it is requested that the motion to dismiss be denied.

Date: June 29, 2007

Respectfully submitted,

LAW OFFICE OF MICHAEL B. MOORE

By: ______________________________
Michael B. Moore
Attorneys for Plaintiffs

*Jimmy D. Haws, et al. V. County of Monterey, et al.* Case No. C 07-02599 JF
Plaintiffs' Memorandum of Points and Authorities in Opposition to County of Monterey and Michael Kanalakis' Motion to Dismiss Plaintiffs' Complaint Page 13 of 13